UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TRINITY HEALTH-MICHIGAN,
d/b/a BATTLE CREEK HEALTH
SYSTEMS,

    Plaintiff,

v.                                       Case No. 1:05-CV-10

BLUE CROSS BLUE SHIELD          HON. GORDON J. QUIST
OF SOUTH CAROLINA,

    Defendant.
_____/

## **OPINION**

Plaintiff, Trinity Health-Michigan ("Trinity"), filed its complaint against Defendant, Blue Cross Blue Shield of South Carolina ("BCBSSC"), on or about November 8, 2004, in the District Court for the 10th Judicial District of Michigan, City of Battle Creek, County of Calhoun. In its complaint, Trinity sought to recover $13,276.12 from BCBSSC for medical services that Trinity provided to Jacquelyn Read. BCBSSC removed the case to this Court on January 5, 2005, on the basis that Trinity's claim is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461. BCBSSC has moved for summary judgment on the grounds that: (1) Trinity lacks standing to recover benefits from the ERISA plan at issue; and (2) BCBSSC is not a proper defendant in this case. As set forth below, the Court concludes that BCBSSC is entitled to summary judgment because the anti-assignment provision in the Plan precludes Trinity's claim for benefits.

**Background**

Between March 9, 2000, and April 30, 2000, Trinity provided inpatient medical services and treatment to Jacquelyn Read ("Read"). During this time, Read's husband was employed by Ryan's Steak House ("Ryan's") and was a participant in Ryan's welfare benefits plan (the "Plan"). Read was a beneficiary under the Plan and was eligible for benefits for covered medical services. BCBSSC was the third party administrator for the Plan pursuant to an Administrative Services Agreement (the "ASA") between BCBSSC and Ryan's.

Trinity billed BCBSSC $13,276.12 for medical services furnished to Read, but BCBSSC denied the claim. According to Trinity, BCBSSC has never explained the basis for its denial of the claim.

On March 11, 2000, around the time of Read's admission for treatment, Read executed a Patient Consent and Authorization. The consent form contains an assignment of insurance benefits provision which provides, in part:

> **ASSIGNMENT OF INSURANCE BENEFITS**: I authorize payment of insurance benefits (including Medicare or Medicaid) to be made directly to [Trinity]. . . . This authorization shall remain effective for six (6) months or until the account is resolved.

(Patient Consent & Authorization, Pl.'s Br. Opp'n Ex. 1.) With regard to payment of benefits and assignments of claims for benefits, the Plan states:

> [BCBSSC] will pay all benefits directly to the Employee upon receipt of due proof of loss, and the right to assign any benefits due and payable hereunder is expressly prohibited unless otherwise determined by [Ryan's]. [Ryan's] will pay benefits as described in Article III of this Plan of Benefits directly to a Provider if [Ryan's] has a written agreement with the Provider that provides for direct payment of benefits.

(Plan, Art. VII, § 4, Def.'s Br. Supp. Ex. B.)

**Motion Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Fin. Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

**Discussion**

BCBSSC contends that Trinity's claim fails because Trinity is neither a participant nor a beneficiary of the Plan and therefore lacks standing. BCBSSC notes that the purported assignment is invalid because the Plan contains a valid anti-assignment provision. BCBSSC also argues that the sole exception to the prohibition against assignment – where the provider has a written agreement with the employer allowing for direct payment of benefits to the provider – does not apply because there was no such agreement. Trinity argues that Read's assignment of insurance benefits to it was valid and, even if it were not, the Plan provides BCBSSC with unlimited discretion to pay benefits to providers if it chooses to do so.

Claims under ERISA are limited to the following four categories of persons: participants, beneficiaries, plan fiduciaries, and the Secretary of Labor. See 29 U.S.C. § 1132(a); Local 6-0682

3

Int'l Union of Paper, Chem, & Energy Workers v. Nat'l Indus. Group Pension Plan, 342 F.3d 606, 609 n.1 (6th Cir. 2003) (stating that the list of person identified in § 502(a) of ERISA is "exclusive"). Moreover, only persons who are participants or beneficiaries, as defined by ERISA, have standing to assert claims for benefits from an "employee welfare benefit plan" under 29 U.S.C. § 1132(a)(1)(B). 29 U.S.C. 1132(a)(1)(B); Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772, 775-76 (6th Cir. 2001). A "participant" includes

> any employee or former employee of an employer, or any member or former member of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit.

29 U.S.C. § 1002(7). A "beneficiary" includes "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Although health care providers are generally not considered participants or beneficiaries of an ERISA welfare plan, see Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1294 (11th Cir. 2004), most circuits, including the Sixth Circuit, have held that a person not otherwise qualifying as a participant or beneficiary may obtain derivative standing by obtaining a valid assignment of rights under a plan from a participant or beneficiary under the plan. See Tango Transp. v. Healthcare Fin. Servs. L.L.C., 322 F.3d 888, 891 (5th Cir. 2003) (stating that "this Court, like many of our sister Circuits, recognizes derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans, to be brought by certain non-enumerated parties"); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277 (6th Cir. 1991).

In Cromwell, the Sixth Circuit stated that "[a] health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits." 944 F.2d at 1277. Although Cromwell validated the use of assignments to create ERISA standing, the court did not consider the issue of the effect of an anti-assignment clause in an employee welfare plan on an otherwise valid assignment by a participant or beneficiary.[1] ERISA contains an anti-assignment clause that applies to pension plans but not to welfare plans, such as the Plan in this case. See 29 U.S.C. § 1056(d)(1); Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 615 (7th Cir. 2002). Most courts have held that ERISA does not prohibit an anti-assignment clause in an employee welfare benefit plan and that an unambiguous anti-assignment provision invalidates an assignment to a health care provider. See Physicians Multispecialty Group, 371 F.3d at 1295 (joining "the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision"); Letourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002) (noting the absence of any prohibition on the inclusion of an anti-assignment provision in an employee benefit plan and concluding that "the plain wording of the instant anti-assignment clause leads inexorably to the conclusion that any purported assignment of benefits from [the beneficiary] to [the provider] would be void"); City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the

---

[1] Whether Trinity has standing depends upon whether it has a "colorable claim" that it is an assignee of a beneficiary of a benefit plan. See City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 228 (1st Cir. 1998)(citing Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 117, 109 S. Ct. 948, 958 (1989)). The Court concludes that Trinity meets this requirement because it has a colorable claim that it is an assignee of a beneficiary of a plan. See id.

negotiations of the contracting parties."); St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties."); Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); Briglia v. Horizon Healthcare Servs., Inc., No. Civ. A. 03-6033, 2005 WL 1140687, at *4 (D.N.J. May 13, 2005) (concluding that an anti-assignment provision was enforceable against a healthcare provider seeking payment pursuant to an assignment); Vardag v. Motorola, Inc., 264 F. Supp. 2d 1056, 1061 (S.D. Fla. 2003) (noting that the anti-assignment provision at issue was "quite sweeping" and precluded the assignment of rights to seek reimbursement for benefits allegedly due under the plan); DeBartolo v. Blue Cross/Blue Shield of Ill., No. 01 C 5940, 2001 WL 1403012, at *5 (N.D. Ill. Nov. 9, 2001) ("An assignment is not valid and enforceable if the plan contains an anti-assignment provision."). This Court finds the reasoning of these cases persuasive and concludes that an unambiguous anti-assignment provision in an ERISA plan precludes a health care provider from enforcing an assignment by a plan beneficiary.

A court interpreting an ERISA plan must give the plan provisions "their plain meaning, in an ordinary and popular sense." Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998). "In applying this 'plain meaning analysis,' the court 'must give effect to the unambiguous terms of an ERISA plan.'" Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 618 (6th Cir. 2002) (quoting Lake v. Metro. Life Ins., 73 F.3d 1372, 1379 (6th Cir. 1996)). The anti-assignment provision at issue in this case is unambiguous. It provides that "the right to assign any benefits due and payable hereunder is expressly prohibited unless otherwise determined by [Ryan's]." The provision does

state that Ryan's will pay benefits directly to a provider, but only "if [Ryan's] has a written agreement with the Provider that provides for direct payment of benefits." Trinity neither alleges nor offers evidence that it had an agreement with Ryan's for direct payment of benefits. Therefore, the Court concludes that the anti-assignment provision precludes Trinity from enforcing the assignment to recover benefits from the Plan.

Trinity argues that the anti-assignment provision is not enforceable because it grants BCBSSC discretion to pay benefits directly to medical providers and because a provision prohibiting assignment is inconsistent with ERISA's central goals. The Court rejects both arguments. First, while it is true that the Plan grants *Ryan's* discretion to pay benefits directly to health care providers, the payment of benefits is expressly conditioned upon a written agreement with the provider. Because there is no indication that Read or Trinity ever sought or requested such an agreement, there was no occasion for BCBSSC or Ryan's to exercise any discretion. See Briglia, 2005 WL 1140687, at *5 (finding it immaterial that the plan permitted assignment of benefits with the administrator's advance written consent because "there is no allegation that the patient L.D. obtained advanced written consent for the assignment given to Dr. Briglia"). Second, as indicated above, most, if not all, courts have agreed that Congress left the determination regarding the assignability or non-assignability of ERISA benefits to the parties. While Trinity's argument that allowing assignments to health care providers would make it easier for participants and beneficiaries to obtain the benefits to which they are entitled has merit, as one court explained, there are countervailing considerations:

> Certainly, there may be great value in permitting assignment of a cause of action to a health care provider because the provider will often be more sophisticated with respect to medical billing issues and have better access to legal services than the plan participant or beneficiary. The court is quite troubled by the fact that anti-assignment clauses have the effect of hindering plan participants from prosecuting claims for reimbursement. However, courts have noted that anti-assignment

7

provisions play an important role in constraining the costs of health care by assuring direct payments to health care providers that participate in the insurer's health plan, thereby encouraging nonparticipating providers to join the plan.

Vardag, 264 F. Supp. 2d at 1062.[2]  Accordingly, the Court must give effect to the anti-assignment provision.

## **Conclusion**

For the foregoing reasons, the Court will grant BCBSSC's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated: September 30, 2005                          /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE

---

[2]Trinity has cited several cases that it claims support its position that the anti-assignment clause should not be enforced. Each of these cases is distinguishable from this case. In University of Tennessee William F. Bowld Hospital v. Wal-Mart Stores, Inc., 951 F. Supp. 724 (W.D. Tenn. 1996), there was evidence that the defendants had paid benefits directly to health care providers in the past and there was no evidence that the defendants had ever refused a plan participant's written request to make direct payments directly to a health care provider. Id. at 727. There is no such evidence here. In Hermann Hospital v. MEBA Medical and Benefits Plan, 959 F.2d 569 (5th Cir. 1992), the court held the plan was estopped by its conduct from relying upon the anti-assignment clause. Trinity does not argue estoppel here. In addition, the court's alternate ruling – that the anti-assignment clause was not intended to apply to health care providers – does not apply to this case because the clause at issue in Hermann Hospital contained typical "spendthrift" language that applied to unrelated third-party creditors rather than health care providers. Finally, Misic v. Building Service Employees Health and Welfare Trust, 789 F.2d 1374 (9th Cir. 1986), is not particularly applicable because the case did not concern an anti-alienation provision in the plan.